UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAVID  WILLS, *et al*,           §
                                 §
        Plaintiffs,              §
VS.                              §        CIVIL ACTION NO. 2:15-CV-193
                                 §
ARIZON STRUCTURES WORLDWIDE,     §
LLC, *et al*,                    §
                                 §
        Defendants.              §

## ORDER

Before the Court is Respondents' Motion to Dismiss (D.E. 11) filed by Arizon

Structures Worldwide, LLC (Arizon) and Johnson Marcraft, Inc. (JMI), along with

briefing in opposition (D.E. 15), reply (D.E. 27), sur-reply (D.E. 36), and response to sur-

reply (D.E. 37).   For the reasons set out below, the Court GRANTS the Motion to

Dismiss.

## JURISDICTION

Petitioners, David Wills (Wills) and James Salmon (Salmon), are natural persons

who are citizens of Texas and Florida, respectively, whereas Respondent Arizon is a

citizen of Illinois and Missouri and Respondent JMI is a citizen of Missouri.

Respondents Ron Scharf and Jan Ligas, who have since been dismissed from this case,

are natural persons who are citizens of Missouri and New Jersey, respectively.   The

amount in controversy exceeds $75,000.    Wills and Salmon properly predicate

jurisdiction in this Court on diversity of citizenship, 28 U.S.C. § 1332, and the Federal

Arbitration Act, 9 U.S.C. § 4.

## STANDARD OF REVIEW

The test of pleadings under Federal Rule of Civil Procedure 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to meritless claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A motion to dismiss based upon principles of res judicata or collateral estoppel, while ordinarily adjudicated in a summary judgment motion based upon the affirmative defense, is proper under Rule 12(b)(6) where the basis for dismissal is clear on the record. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570-76 (5th Cir. 2005).

Whether res judicata applies is a question of law. *Id*. at 571. Arizon and JMI assert that their claim of res judicata may be demonstrated on the face of the record, consistent with Rule 12(b)(6) because relevant documents are attached to the Petition (D.E. 1). *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004) (court may consider documents attached to the complaint in a Rule 12(b)(6) challenge). At issue are the contracts between the parties and the orders of the Missouri state courts: D.E. 1-1, 1-2, 1-5, 1-6, 1-7, 1-8.

The Court may also consider documents filed in the public record of the parallel state court action, all of which are put in issue by the Petition (D.E. 1) and were provided in the Motion to Dismiss (D.E. 11). *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). In a separate notice, Wills and Salmon filed a copy of the order denying their motion to compel arbitration for the Court's consideration—another public record pertaining to the res judicata issue. D.E. 26-1. Also at issue is Petitioners Wills and

Salmon's relationship with Global Blue Technologies-Cameron, LLC and its affiliates[1] (jointly GBT).  In their Petition, Petitioners state that they are agents of GBT.  D.E. 1, pp. 5, 10, 12.  In answers to the Missouri state court action, copies of which Petitioners submitted for the Court's consideration, Wills states that he is the Chief Executive Officer of GBT.  D.E. 35.  And Salmon is President of an affiliate.  *Id*.

Wills and Salmon do not resist treatment of the res judicata issue as one for dismissal under Rule 12(b)(6).  Thus the Court proceeds under Rule 12 and does not convert this matter to a summary judgment motion under Rule 56.

## FACTS

On April 16, 2013, GBT, along with Arizon and its affiliate, JMI (jointly referred to as Arizon), executed a Non-Disclosure Agreement, Financing and Supply Agreement (NDAFS) whereby GBT and Arizon could freely exchange trade secret and other confidential information in connection with the purchase and sale of large outdoor dome structures.  GBT, which is in the business of shrimp farming in Taft, Texas, sought these structures from Arizon in connection with its operations.  Wills, Chief Executive Officer for GBT, signed the NDAFS in his representative capacity.  The Arizon representative signed the NDAFS as Chairman of both Arizon and JMI.

In separate but immediately sequential clauses, the NDAFS contains both an arbitration clause ruling out litigation and a forum-selection clause in the event of litigation:

---

[1]   Global Blue Technologies, Inc., Global Blue Technologies International LLC, and Global Blue Technologies USA, LLC.  See D.E. 1-1, p. 6.

- "Any dispute relating to this Agreement or any other matter shall be fully and finally resolved by binding Arbitration under the rules of the American Arbitration Association 'AAA' at a location that is mutually agreed by the Parties hereto, or if no such agreement is reached, then at a location specified by an Arbitrator shall be final and binding upon the Parties, from which there shall be no appeal."  D.E. 1-1, p. 3.

- "Should either Party bring any action arising from this Agreement, such action must be initiated and maintained in a federal or state court located in or covering Saint Louis County, Missouri ("Competent Court")."  *Id.*

A few weeks later, on April 29, 2013, Arizon issued three Quotations for the sale of separate structures, listing as "Buyer" the following:  David K. Wills, Jim Salmon, and GBT.  D.E. 1-2.  The Quotations begin with the statement:  "Buyer expressly acknowledges the Non-Disclosure Agreement, Financing and Supply Agreement ("NDAFS") dated April 16th, 2013 . . . .  The Goods being purchased by the Buyer from the Seller are a part of the Exclusive products and processes provided for in said NDAFS."  *Id.*, p. 2.  The terms of the Quotation include a combination forum-selection and arbitration clause:

- "Any controversy or claim arising out of or relating to payment, or to Seller's Submittal, Buyer and Seller's Contract, including these Terms and Conditions of Sale, or any other matter, shall be settled exclusively

in St. Louis County Missouri Circuit Court, or at Seller's option, by arbitration administered by the American Arbitration Association (AAA) under its Construction Industry Arbitration Rules in St. Louis County, Missouri, and Buyer hereby waives any appeal from the arbitration award and Fast Track Procedures provided for by AAA Rules and Procedures." D.E. 1-2, p. 4.

This agreement was signed on the Buyer's Acceptance page by Wills and Salmon, without stating their representative capacities for GBT, on lines preceding the indication "Duly Authorized Representatives." *Id*., p. 3.

A dispute between the parties ensued and GBT did not make a June 1, 2014 payment to Arizon or other payments thereafter. On December 11, 2014, Arizon filed suit against GBT, Wills, and Salmon in the Circuit Court of the County of St. Louis, State of Missouri under Case No. 14SL-CC04233. Before being served with that lawsuit, GBT (without inclusion of Wills and Salmon) initiated an arbitration proceeding in Houston, Texas, against Arizon. In the Missouri Circuit Court, Arizon filed a motion to stay the arbitration, claiming that there was no enforceable arbitration agreement between the parties; GBT filed a motion to compel arbitration. Neither Wills nor Salmon defended against Arizon's motion to stay and neither joined in GBT's motion to compel.

On February 10, 2015, the Missouri Circuit Court denied GBT's request to compel arbitration and granted Arizon a stay of arbitration. D.E. 1-5. The Missouri Circuit Court's subsequent order of March 27, 2015, refusing to stay the litigation pending

appeal of the arbitration order, finds that Wills and Salmon did not oppose the motion to stay arbitration.   D.E. 1-6, p. 2.   After the Circuit Court converted its no-arbitration "order" to a "judgment," the Missouri Court of Appeals, Eastern District, in No. ED102757, accepted GBT's appeal of the no-arbitration order and, on April 22, 2015, issued a stay of litigation as to claims against GBT, but not as to the individuals.[2]   D.E. 1-8.  GBT's appeal remains pending.

On April 29, 2015, Wills and Salmon filed their motion to dismiss the Missouri Circuit Court action, contesting personal and subject matter jurisdiction, individual liability, and seeking to compel arbitration.  D.E. 11-8.  On the same date, they filed this action to stay the Missouri state court action and compel arbitration.  D.E. 1.  On June 2, 2015, Arizon filed its Motion to Dismiss this federal action.  Thereafter, on June 7, 2015 (in advance of a June 10, 2015 hearing in the Missouri Circuit Court), Wills and Salmon sought a temporary restraining order and preliminary injunction from this Court to prevent further litigation in the Missouri Circuit Court action pending an order compelling arbitration.  D.E. 14.

On July 1, 2015, the Missouri Circuit Court entered its order denying Wills and Salmon's motion to dismiss that action.  D.E. 26-1.  In that order, the Missouri Circuit Court observed that it had already ruled against arbitration of the claims in the case and further stated that Wills and Salmon had an even lesser claim to arbitration than GBT because they were not parties to the NDAFS.  *Id*.   There is nothing in the record

---

[2]   The order states, "The circuit court proceedings are not stayed as to the individual defendants Ron Scharf and Jan Ligas."  Those individuals are intervenor plaintiffs (along with JMI) and the Court of Appeals appears to have intended to reference the only individual "defendants," Wills and Salmon.

indicating whether Wills and Salmon appealed that decision.   However, they have complied with the Missouri Circuit Court's order that they file their answers to the claims against them, thus continuing the Missouri Circuit Court litigation on the merits.  D.E. 35.

## DISCUSSION OF RES JUDICATA

In its Motion to Dismiss now pending before this Court, Arizon argues that Wills and Salmon are bound by the Missouri Circuit Court's April 8, 2015 no-arbitration judgment under principles of res judicata or collateral estoppel because Wills and Salmon are in privity with GBT.  Arizon disclaims any reliance on the July 1, 2015 Missouri Circuit Court order denying Wills and Salmon's motion to dismiss in which they sought to compel arbitration, themselves.

Prior to Wills and Salmon's Petition (D.E. 1) invoking this Court's jurisdiction, the Missouri Circuit Court had already exercised jurisdiction, issuing its no-arbitration order.  For this Court to proceed, this Court must find that (a) Wills and Salmon were not bound by the April 8, 2015 Missouri no-arbitration judgment or (b) the Missouri no-arbitration judgment is not entitled to preclusive effect.  Because the Court finds that the Missouri no-arbitration judgment binds Wills and Salmon and is entitled to preclusive effect, the Court DISMISSES this action without reaching Arizon's additional arguments regarding abstention and forum-selection or *forum non conveniens*.

### 1.  Binding Wills and Salmon

#### a.  The Individuals' Approach to Arbitration, as Reflected in the Procedural History, Shows that Their Interests are Aligned with GBT's.

Wills and Salmon were joined as parties Defendant in the Missouri action no later than January 7, 2015, when Arizon amended its petition to include Count IV, seeking a declaration that any claims between the parties were not subject to arbitration.  Amended Petition, D.E. 10-2, p. 3.  Along with GBT and using the same counsel, Wills and Salmon entered an appearance in the Missouri case on January 21, 2015.  D.E. 11-2.  Before those appearances, however, Arizon had filed its motion to stay arbitration, serving the motion on two attorneys, one of which was served as General Counsel to GBT.  D.E. 11-2, p. 13.

The effect of Arizon's motion was to accelerate the declaratory judgment sought in Count IV and prevent arbitration by any of the defendants—GBT, Wills, and Salmon. *Id.*, pp. 2-3.  While GBT opposed Arizon's motion and filed its own motion to compel arbitration, neither Wills nor Salmon opposed Arizon's motion or sought arbitration, themselves, at that time.

On January 23, 2015, Wills and Salmon sought an extension of time in which to respond to the complaint.  D.E. 11-3.  In their motion for extension of time, they acknowledge the competing motions on arbitration, defer to GBT's efforts to litigate that issue, and ask that their deadline be extended to 21 days after a ruling on the competing arbitration motions.  D.E. 11-3.  While the record does not contain a ruling on that

motion, it appears that the motion for extension of time was granted.  They thus sought and obtained relief based upon GBT's litigation of the arbitration issue.

The Missouri Circuit Court granted the motion to stay arbitration on February 10, 2015.  D.E. 1-5.  Thereafter, the Court issued its no-arbitration decision in a judgment, which GBT appealed.  The Missouri Circuit Court denied GBT's request to stay the litigation pending appeal, and observed that Wills and Salmon had not opposed Arizon's motion to stay arbitration, had not filed their own motion to compel arbitration, and had not joined the appeal of the no-arbitration order.  D.E. 1-6, p. 2.  The Court of Appeals granted a stay of the Missouri Circuit Court litigation, but only as to claims against GBT, the appellant.  Thus the Missouri litigation was to proceed on the claims of Arizon, JMI, Scharf, and Ligas against Wills and Salmon.

On April 29, 2015, Wills and Salmon filed their motion to dismiss, based in part on their claim that they were entitled to arbitration pursuant to the NDAFS.  D.E. 11-8.  In their opposition to the motion to dismiss, Arizon, JMI, Scharf, and Ligas argued that Wills and Salmon were bound by the prior no-arbitration decision that involved only GBT by virtue of their privity with GBT.  D.E. 11-9, pp. 16-17.  In its July 1, 2015 order denying the motion in its entirety, the Missouri Circuit Court stated with respect to arbitration:

> The Individual Defendants are not parties to the NDAFS and the Court has already ruled that the corporate defendants are not entitled to arbitration under the NDAFS.  As non-signatories to the NDAFS, the Individual Defendants cannot have arbitration rights that are greater than those of the signatories to the NDAFS.

D.E. 26-1, p. 4.   In this Court, Arizon renews its argument that Wills and Salmon are bound by the April 8, 2015 no-arbitration judgment, thus rendering this action moot.

Wills and Salmon stood by while GBT litigated the arbitration matter to a conclusion in the Missouri court.   At the hearing on the Motion to Dismiss in this Court, Wills and Salmon's attorney stated that they did not oppose Arizon's motion to stay arbitration in the Missouri court because they would have waived their right to contest jurisdication.   In any event, Arizon's argument is based exclusively on Wills and Salmon's privity with GBT and that privity is the basis for this Court's decision.

### b.  Wills and Salmon Are in Privity with GBT with Respect to Arbitration

Missouri law governing the application of principles of claim preclusion is consistent with that generally applied in the Fifth Circuit.   To bind Wills and Salmon under res judicata, there must generally be: (a) identity of the thing sued for, (b) identity of the cause of action, (c) identity of the persons or parties to the action, and (d) an identity of the quality of the person for or against whom the claim is made.   *E.g., Norwood v. Norwood*, 183 S.W.2d 118, 122 (Mo. 1944).   *See also*, *Drier v. Tarpon Oil Co.*, 522 F.2d 199, 200 (5th Cir. 1975).

This case clearly involves the same thing sued for (arbitration) and is based on the same cause of action (enforceability of arbitration pursuant to the NDAFS) as was raised in the Missouri Circuit Court.   The parties seeking to avoid arbitration are identical.   Thus the only question is the identity of the parties seeking to compel arbitration—GBT versus

Wills and Salmon.  GBT will be considered "identical" to Wills and Salmon if there is privity between them.  *Varnal v. Kansas City*, 481 S.W.2d 575 (Mo. Ct. App. 1972).

In discussing *Varnal* and the nature of privity, the Missouri Supreme Court described the requirement as having "an identity of interests in the subject matter."  *Am. Polled Hereford Ass'n v. City of Kansas City*, 626 S.W.2d 237, 241 (Mo. 1982).  Wills and Salmon, just like GBT, have been sued on the basis of alleged contractual obligations arising from the NDAFS and Quotations.  Wills and Salmon, just like GBT, seek to enforce arbitration by relying on the terms of the NDAFS.  GBT's inducement and desire to protect the common interest is clear.  *Seibert v. City of Columbia*, 461 S.W.2d 808, 811 (Mo. 1970).  The only difference between them—that GBT signed the NDAFS whereas Wills and Salmon did not (in an individual capacity)—makes GBT an even better proxy for achieving the arbitration that Wills and Salmon seek.  D.E. 26-1.  This represents the necessary "identity of interest in the subject matter."

However, Wills and Salmon claim to have an independent right to advance arbitration by virtue of having been sued in their individual capacities.  But they have failed to identify any aspect of being sued individually that causes their interest in compelling arbitration to diverge from that advocated by the corporation they served when participating in the transactions triggering this case.  They have identified no argument of fact or law that elevates their claim to arbitration above that of GBT's.

And to the contrary, they defend the Missouri Circuit Court action by arguing that they participated in the underlying transactions only as corporate agents of GBT.  D.E. 11-8.  In that respect, they concede that they have privity with GBT to the extent that they

acted in that corporate representative capacity.  *See Drier,* 522 F.2d at 200 (when an individual has a position of control over a corporation and there is no evidence of a genuine issue that would defeat the actual ability of that person to control the corporation, then there is privity).

Whatever the merits of the underlying claim of liability may be, Wills and Salmon are aligned with GBT with respect to the claimed right to arbitration.  Their claims involve the same transaction and they rely on the same contractual clause.  The fact that they are also represented by the same counsel speaks to the lack of divergent interests between them.

The capacity in which they have been sued has no impact on the relevant interests—those interests employed in their effort to obtain arbitration.  *See Steinhilber v. Lake Winnebago Home Owner's Ass'n,* No. 89-0554-CV-W-9, 1991 WL 220249, *7 (W.D. Mo. Sept. 5, 1991) (assessing privity on the basis of the close relationship between the corporation and the individuals, regardless of the fact that the individuals had not previously been sued), *aff'd,* 965 F.2d 602 (8th Cir. 1992).  Without some proof regarding a difference in interests between the corporation and its representatives who are commonly represented by counsel, a finding of privity is appropriate.  *Missouri Mexican Prods., Inc. v. Dunafon,* 873 S.W.2d 282, 286 (Mo. Ct. App. 1994).[3]  *See also Palmore v. City of Pacific,* 393 S.W.3d 657, 667 (Mo. Ct. App. 2013) (finding privity between related corporations).

---

[3]  *See also, Nelson v. Missouri Div. of Family Servs.*, 688 S.W.2d 28, 31 (Mo. Ct. App. 1985) (where the subject matter is the same, it does not matter whether the suit is against the government agency or its employees).

Wills and Salmon's reliance on *Gamble v. Browning*, 379 S.W.3d 194, 200 (Mo. Ct. App. 2012), is misplaced.  That case involved an order allowing Gamble, a criminal defendant, to withdraw a guilty plea based upon manifest injustice related to the conduct of the police officers who acted against him in retaliation.  In the later malicious prosecution civil action against the officers involved, Gamble sought to admit the prior order from the criminal case.  The court held that the interests of the State and its law enforcement officers were sufficiently distinct to eliminate any claim of privity.  *Gamble* is based upon a clear difference between a criminal prosecution where the State has an obligation to act for the public good and a civil case against individuals with a private interest in avoiding a judgment for damages.  Thus the case has no bearing here, where the effort to compel arbitration is identical for both GBT and Wills and Salmon.

Similarly, *De Llano v. Berglund*, 183 F.3d 780, 781-82 (8th Cir. 1999), is not helpful because it involved separate claims against a city under Title VII and against its employees under Section 1983.  There was no privity because the parties had demonstrated divergent interests in defending against the claims.  That is not the case here, where GBT and Wills and Salmon sought arbitration under the same contractual rights, with GBT having a stronger claim to achieve Wills and Salmon's desired result.

The Court finds that GBT and Wills and Salmon share an identity of interests in the subject matter of compelling arbitration.  Their common interests arising from the same documents, their close corporate relationship, and their representation by the same legal counsel all support a finding that there is privity between them.

## 2.  The No-Arbitration Judgment
## is Entitled to Preclusive Effect

Wills and Salmon concede that this Court is "required to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged." D.E. 15, p. 4. More specifically, a prior state court judgment may have res judicata effect in a parallel federal proceeding seeking to compel arbitration. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu (Haydu I)*, 637 F.2d 391, 395 & n.5 (5th Cir. 1981) (applying Florida law). So the question is whether the Missouri Circuit Court's no-arbitration judgment is sufficiently final for res judicata purposes even while the order remains on appeal in the state court system and the underlying case is preparing for trial.

The parties agree that Missouri state law rather than federal law applies to the decision whether the state court judgment is entitled to res judicata effect. This is consistent with the Full Faith and Credit Act, 28 U.S.C. § 1738 (state court decision is to be given the effect accorded by the law of the state that issued the decision); *Haydu I*, 637 F.2d at 398.

Wills and Salmon focus on the concept of a "final judgment." According to them, while appealable, the orders denying arbitration are not considered "final." For this proposition, they cite two opinions issued by the Missouri Supreme Court en banc: *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 n.2 (Mo. 2009) and *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 774 (Mo. 2005). Those opinions note that arbitration decisions are appealable despite not being "final judgments" in the traditional sense.

14 / 17

*Lawrence* and *Triarch*, however, do not address the issue of whether no-arbitration judgments, which are non-traditional judgments, are nonetheless entitled to preclusive effect.

Arizon, viewing the no-arbitration judgment like any other final judgment, argues that it is automatically preclusive, citing *Brown v. Brown-Thill*, 437 S.W.3d 344, 349 (Mo Ct. App. 2014). That opinion states that "[u]nder Missouri law, a judgment on the merits at the trial-court level is considered a final judgment for purposes of res judicata and collateral estoppel, even if the appeal of that judgment is still pending." *Brown,* 437 S.W.3d at 349 (quoting *Noble v. Shawnee Gun Shop, Inc.*, 316 S.W.3d 364, 369 (Mo. Ct. App. 2010)). While this may be an accurate statement of the law, the case involved a final judgment "on the merits" resulting from the court's confirmation of an arbitrator's award. It was not the preliminary decision whether to permit arbitration in the first instance.

To supply the missing logical link, Arizon cites *Nicholson v. Surrey Vacation Resorts, Inc.*, Nos. SD 32745 and SD33075, 2015 WL 471785, *5 (Mo. Ct. App. Feb. 4, 2015), an unpublished opinion. There, the Missouri appellate court dismissed an appeal of the denial of a successive request for arbitration, stating:

> Surrey's Second Renewed Motion to Compel Arbitration concerned the exact same matter and issue involved in the first appeal—compelling arbitration, which was pending in our Court during the time Surrey's second renewed motion was filed in, pending before, heard and decided by the trial court. Accordingly, any action taken by the trial court on that motion is a nullity, is void, and presents nothing for appeal.

*Id.* (citing *Love v. First Crown Fin. Corp.*, 662 S.W.2d 283, 285–86 (Mo. Ct. App. 1983) (which held that an injunction order, which was considered appealable even though not a "final judgment," had preclusive effect).   *See also, Kaplan v. Divosta Homes, L.P.*, No. 2:10-cv-208-FtM-29SPC, 2010 WL 3945110 (M.D. Fla. Oct. 7 2010) (holding that while the state court applying Florida law may confirm or vacate its own order compelling arbitration, that order is res judicata as to the federal court).

Giving the Missouri Circuit Court's no-arbitration judgment preclusive effect is consistent with other federal cases construing the law of other states.   For instance, the Third Circuit held that arbitration, by its nature, is a special proceeding where the only merits are arbitrability, making an arbitration decision's finality equivalent to that of a judgment on the merits. *Towers, Perrin, Forster & Crosby, Inc. v. Brown*, 732 F.2d 345 (3d Cir. 1984).   The Eleventh Circuit, construing Georgia law, held that finality for appeal is the same as finality for preclusion.   *Community State Bank v. Strong*, 651 F.3d 1241, 1265-66 (11th Cir. 2011).

Wills and Salmon rely on the ostensibly contrary holding of *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 840 (7th Cir. 1999).   In that class action, the United States District Court for the Northern District of Illinois proceeded to compel arbitration in spite of a contrary state court order that found the arbitration agreement void.   The state court order was on appeal pursuant to a state rule permitting partial final judgments to be appealed.   The Seventh Circuit affirmed the federal district court's action only after the state appellate court had determined that the state trial court's order was not final and appealable under the state rule because of some particular language in the order.   Thus

*We Care Hair* does not persuade this Court that the Missouri Circuit Court no-arbitration judgment currently on appeal in Missouri is non-final or lacks preclusive effect.

## CONCLUSION

For the reasons set out above, the Court finds that Wills and Salmon are in privity with GBT with respect to their request to compel arbitration and that the Missouri Circuit Court's April 8, 2015 judgment is entitled to preclusive effect under the doctrine of res judicata as a final decision regarding the discreet issue of arbitrability, which is appealable and subject to the jurisdiction of the Missouri Court of Appeals.  The state court judgment thus bars this action.  Arizon's motion to dismiss is GRANTED. Arizon's request for attorney's fees and costs is DENIED.


ORDERED this 20th day of August, 2015.


NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE